IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SYLVESTER B. LANE and
MARY LANE,

    Plaintiffs,

vs.                              CASE NO. 3-11-cv-374/RS-CJK

FORT WALTON BEACH HOUSING
AUTHORITY, et al.,

    Defendants.
_____/

## ORDER

Before me are Defendants' Motion to Dismiss (Doc. 59) and Plaintiffs' Response in Opposition (Doc. 61).

### Standard of Review

To survive a motion to dismiss, a complaint must contain sufficient facts, which accepted as true, state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569, 127 S. Ct. 1955, 1974 (2007). Granting a motion to dismiss is appropriate if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984). In making this determination, the court must accept all factual allegations in the complaint as true and in the light most favorable to Plaintiff. *Christopher v. Harbury*, 536 U.S. 403, 406, 122 S. Ct. 2179, 2182 (2003).

## Background

Plaintiffs are recipients of Section 8 rental assistance. They bring this suit seeking reinstatement of their rental assistance which Defendants terminated. (Doc. 51, p.16-17). In late January 2011, Defendant Fort Walton Beach Housing Authority ("FWBHA") sent Plaintiffs a letter informing them that they would terminate their rental assistance. (*Id*. at ¶28; Doc. 6, Attach.1). This letter advised Plaintiffs that the reason for the termination was a violation of the Section 8 requirement that all persons living in the unit must be approved by the housing authority.[1] Specifically, the letter stated an unapproved person, Mackil Taylor, "registered as a sexual offender, at your address on October 23, 2010." The letter advised Plaintiffs of their right to dispute the determination by requesting an informal hearing. (Doc. 6, Attach. 1). Plaintiffs timely requested a hearing.

Before the hearing took place, Plaintiffs received a "homeless verification form" from the St. Vincent de Paul Society in San Francisco indicating that Mr. Taylor was living in California. The verification form indicated that from January 18, 2011, until the current date of February 1, 2011, Mr. Taylor was in San Francisco. (Doc. 6, Attach. 3). This information was passed along to the FWBHA.

FWBHA held an informal hearing on February 21, 2011 before a Hearing Officer and the FWBHA Board of Commissioners. (Doc. 51, ¶31). At the hearing, Plaintiffs testified that Mr. Taylor did not live with them, and has never lived with them. *Id*. at

---

[1] "The composition of the assisted family residing in the unity must be approved by the PHA. The family must promptly inform the PHA of the birth, adoption or court-awarded custody of a child. The family must request PHA approval to add any other family member as an occupant of the unit. No other person . . . may reside in the unit." 24 C.F.R. § 982.551 (2011).

¶36.  Ms. Jessica Faircloth, the Section 8 case manager, did not provide any personal or direct knowledge of Mr. Taylor's residence.  Rather, she only testified about documentation she obtained regarding Mr. Taylor.  These documents included internet printouts of the Florida sexual offender registry indicating that Mr. Taylor had listed the Plaintiffs' address as his residence.  *Id.* at ¶37.  Similarly, Ms. Faircloth presented the Walton County Sheriff's call log which Defendants claim support the contention that Mr. Taylor resided with Plaintiffs. (*See* Doc. 6, Attach. 2).

On February 25, 2011, FWBHA sent Plaintiffs a letter stating that their rental assistance benefits would be terminated notwithstanding their arguments made at the informal hearing.  (Doc. 51, ¶41; Doc. 6, Attach. 5).  After a hearing, I found that this letter was insufficient to make a determination whether the Hearing Officer's actions complied with applicable regulation.  (*See* Doc. 31).   I therefore granted an injunction, and remanded the matter to FWBHA so that the Hearing Officer could make findings consistent with 24 C.F.R. 982.555(e)(6).  (Doc. 38).

On September 27, 2011, FWBHA set Plaintiffs a new letter upholding the termination of Plaintiffs' rental assistance. (Doc. 49, Attach. 1).  Plaintiffs have filed an Amended Complaint (Doc. 51) which attacks this determination.

## Analysis

Plaintiffs' first count is a 42 U.S.C. § 1983 claim alleging violations of their Fourteenth Amendment procedural due process rights and the United States Housing Act of 1937.  They also claim that FWBHA's actions violate the federal regulations which govern the hearing process and safeguard Plaintiffs' right to due process.  HUD

regulations provide as follows with respect to the Section 8 termination hearing procedures:

> (e) Hearing procedures
>
> (1) Administrative plan. The administrative plan must state the PHA procedures for conducting informal hearings for participants.
>
> (2) Discovery. (i) By family. The family must be given the opportunity to examine before the PHA hearing any PHA documents that are directly relevant to the hearing. The family must be allowed to copy any such document at the family's expense. If the PHA does not make the document available for examination on request of the family, the PHA may not rely on the document at the hearing.
>
> (ii) By PHA. The PHA hearing procedures may provide that the PHA must be given the opportunity to examine at PHA offices before the PHA hearing any family documents that are directly relevant to the hearing. The PHA must be allowed to copy any such document at the PHA's expense. If the family does not make the document available for examination on request of the PHA, the family may not rely on the document at the hearing.
>
> (iii) Documents. The term "documents" includes records and regulations.
>
> (3) Representation of family. At its own expense, the family may be represented by a lawyer or other representative.
>
> (4) Hearing officer: Appointment and authority. (i) The hearing may be conducted by any person or persons designated by the PHA, other than a person who made or approved the decision under review or a subordinate of this person.
>
> (ii) The person who conducts the hearing may regulate the conduct of the hearing in accordance with the PHA hearing procedures.

> (5) Evidence. The PHA and the family must be given the opportunity to present evidence, and may question any witnesses. Evidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings.
>
> (6) Issuance of decision. The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision. Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing. A copy of the hearing decision shall be furnished promptly to the family.

24 C.F.R. § 982.555

### A. The Procedure

First, Plaintiffs contend that FWBHA's grievance policy improperly places the burden at an informal hearing on the Section 8 recipient. (Doc. 51, ¶60a, ¶69a). While the HUD regulations do not specifically address which party carries the burden, the Eleventh Circuit has clearly stated that the "PHA has the burden of persuasion and must initially present sufficient evidence to establish a prima facie case. . . . Thereafter, the Section 8 participant has the burden of production [to rebut]." *Basco v. Machin*, 514 F.3d 1177, 1182 (11th Cir. 2008).

Plaintiffs contend that FWBHA's policy is facially defective. It states the following:

> At the hearing, the Complainant must first make a showing of an entitlement to the relief sought and thereafter the FWBHA must sustain the burden of justifying FWBHA's action or failure to act against which the Complainant is directed.

FWBHA, Public Grievance Procedure, Appendix A, p.9 (March 2009).

Defendants assert that regardless of what the procedures say, the actual facts of the case demonstrate that FWBHA did not impermissibly shift the initial burden to Plaintiffs. (Doc. 59, p.6). Rather, Defendants assert that FWBHA bore the burden of production by offering the sexual offender registry which showed that an unregistered person was residing with Plaintiffs. *Id.* It was then up to Plaintiffs to rebut FWBHA's evidence.

Defendants raise a novel issue. They basically contend that whether the procedure is valid is of no moment because the procedure was not followed as written. Neither party has cited a case on point. However, the basic role of the federal judiciary is to resolve cases and controversies where there injuries are caused by the conduct complained of. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-560 (1992). Plaintiffs injuries were not caused by FWBHA's policy as written. Rather, the injury was caused by FWBHA's actual conduct, which is not in dispute.

Plaintiffs admit that the Ms. Faircloth testified to the Hearing Officer about documentation that she obtained regarding Mr. Taylor. (Doc. 51, ¶37). These documents included a printout of Florida's sexual offender registry. *Id.* The testimony of Ms. Faircloth takes this case outside of the hypothetical situation where a plaintiff bears the initial burden.

### B. Sufficiency of Evidence

Plaintiffs contend that the evidence presented at the hearing was insufficient to establish, by a preponderance of the evidence, that Mr. Taylor resided with them. (Doc.

51, ¶60b, ¶60c, ¶69b, ¶69c). Specifically, they claim that no "p*ersonal, direct* knowledge of Mr. Taylor's residence" was submitted. (Doc. 61, p.6)(emphasis original).

Federal regulation requires that the decisions of the Hearing Officer must be supported by a preponderance of the evidence. *See* 24 C.F.R. § 982.555(e)(6). A preponderance of the evidence means "an amount of evidence that is enough to persuade [the trier of fact] that the Plaintiff's claim is more likely true than not true." Eleventh Circuit Pattern Jury Instructions (Civil Cases), Basic Instruciton 6.1 (2005). *See also Weathers v. Lanier*, 280 Fed. Appx. 831, 833 (11th Cir. 2008) (unpublished).

A Hearing Officer's determinations may be supported by hearsay. "Hearsay may constitute substantial evidence in administrative proceedings as long as factors that assure the underlying reliability and probative value' of the evidence are present." *Basco*, 514 F.3d at 1182 (citation and quotation omitted). The reliability of hearsay evidence depend on "whether (1) the out-of-court declarant was not biased and had no interest in the result of the case; (2) the opposing party could have obtained the information contained in the hearsay before the hearing and could have subpoenaed the declarant; (3) the information was not inconsistent on its face; and (4) the information has been recognized by courts as inherently reliable." *Id*.

Here, the Hearing Officer stated six reasons why he decided to terminate Plaintiffs' assistance. (Doc. 49, Attach. 1).

  (1) Mr. Mackil Taylor registered as a sex offender using Plaintiffs' address.

  (2) Mr. Taylor was found at the address in December 2010. He confirmed to the
      Okaloosa Sheriff's Office that Plaintiffs' residence was his address.

(3) FWBHA attempted to resolve the situation with Plaintiffs on several occasions without success. Specifically, Plaintiffs could have requested the clerk of the court to remove their address as Mr. Taylor's home. Plaintiffs did not do this.

(4) A sexual offender must change is address within 48 of moving. Mr. Taylor's association with the address exceeded the allowed visitor period of 14 days.

(5) Ms. Faircloth communicated with the Sheriff's office to resolve the matter internally. Plaintiffs repeatedly stated that they had disassociated with Mr. Taylor.

(6) The requirements of Section 8 family obligations.

Any statements made by Ms. Faircloth concerning the printout of Florida's sexual offender registry is hearsay. The printout itself is also hearsay. However, their contents have sufficient indicia of reliability to be considered by the Hearing Officer in formulating his determination. First, Florida law makes it a third degree felony for a sexual offender to misreport his residence in the registry. Fla. Stat. § 943.0435(9)(a). This punishment for falsification makes the registry reliable. Plaintiffs argue that Mr. Taylor had an incentive to lie in order to avoid prosecution for failure to register. (Doc. 61, p.10). However, this incentive is lessened by the fact that a sexual offender may report a transient residence, a future temporary residence or a post office box if he has no permanent address. *Id.* at § 943.0435(2)(b). A sexual offender may also register a motor vehicle as his place of residence. *Id.*

Besides the sex offender registry, the Hearing Officer also considered evidence that the Sheriff's office made contact with Mr. Taylor at Plaintiffs' residence. The Sherriff's call log indicates that on October 21, 2010, contact was made with a male at

Plaintiffs' residence who advised them that Mr. Taylor "was not in." (Doc. 6, Attach.1, p,2). The officers advised that Mr. Taylor needed to register correctly. *Id.* Later that day, Mr. Taylor "called requesting to know why deputies were looking for [him]." *Id.* at 3. While the call log is also hearsay, it is reliable and supports the information contained in the sex offender registry. The fact that Mr. Taylor called the Sheriff's office within hours of their visit indicates that the residents were, at a minimum, in communication with Mr. Taylor. And, the fact that the call log indicates that the person at the residence stated that Mr. Taylor "was not in" suggests that Mr. Taylor had some relationship with the Plaintiffs' residence. That is, the author of the call log could have stated that the person at the residence informed him that Mr. Taylor did not live there. Instead, he chose to use the words "was not in."

The information Plaintiffs provided concerning the San Francisco homeless verification is also probative, but the Hearing Officer was not unreasonable for discounting it. The verification (Doc. 6, Attach. 3) was not created with threat of criminal sanction to buttress its veracity. And, the verification only attests to Mr. Taylor living in California for a period of fourteen days in January 2011.

Plaintiffs contend that the rationale in *Basco v. Machin*, 514 F.3d 1177, applies in this case to undermine the Hearing Officer's determination. In *Basco*, the Eleventh Circuit found that the information contained in two police reports were insufficient to support a hearing officer's findings. However, those reports contained contradictory information about the name of the individual alleged to be residing with the Section 8 recipients. In addition, there was no information concerning the length of the

individual's stay. Here, the identity of Mr. Taylor is clear, and he listed Plaintiffs' address as his permanent resident. Thus, the two pieces of information on which the Hearing Officer relied – the sexual offender registry and the call log—are adequate to support his determination.

### C. Confrontation and Cross Examination

At the informal hearing, Plaintiffs had the right to cross examine any witness upon which a FWBHA relied. *See* Section 8 Certificate Program, Moderate Rehabilitation Program and Housing Voucher Program, 55 Fed. Reg. 28,538 (July 11, 1990). *See also* 24 C.F.R. § 982.555(e)(5). Implicit in the right to cross-examine, is that there must first be a witness to directly examine. Nothing in the law requires FWBHA to call witnesses so that they may be cross examined. While Plaintiffs do not have the power to compel witnesses to appear, Plaintiffs acknowledge that they could have presented their own evidence. Quite simply, Plaintiffs' rights to confrontation and cross examination were not infringed by the absence of witnesses.

### D. FWBHA's Administrative Plan

Plaintiffs contend that FWBHA violated 24 C.F.R. §982.54(c) by failing to give them thirty days notice of termination, and by terminating the assistance prior to the last day of the month following the month in which notice was issued following their informal hearing. (Doc. 51, ¶60e, ¶60f). These claims are now moot. Plaintiffs have now been given adequate notice.

### E.  Hearing Officer Determination

Plaintiffs contend that FWBHA's February 25, 2011 written statement did not comport with 24 C.F.R. § 982.555(e)(6).  (Doc. 51, ¶60f, ¶69f).  This issue has been mooted by the remand (Doc. 38) and new written statement (Doc. 49, Attach. 1).

**IT IS ORDERED:**

1. Defendants' Motion to Dismiss (Doc. 59) is **GRANTED**. The case is dismissed with prejudice.
2. The clerk is directed to close this case.

**ORDERED** on November 18, 2011.

/S/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**